ORIGINAL

Approved: _Jessica K. Feinstein_
JESSICA K. FEINSTEIN
Assistant United States Attorney

DOC # ____

Before: HONORABLE HENRY B. PITMAN
United States Magistrate Judge
Southern District of New York

16 MAG 6647

------------------------------------X
                                    :
UNITED STATES OF AMERICA            :  COMPLAINT
                                    :
                                    :  Violations of 18 U.S.C. §§
        -v.-                        :  1951, 924(c), 922(g)
                                    :
JOHNELL TURNER,                     :  COUNTY OF OFFENSE: NEW
            Defendant.              :  YORK, BRONX
                                    :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

ELLIS DELOREN, being duly sworn, deposes and says that he is a Detective with the New York City Police Department and charges as follows:

COUNT ONE
(Attempted Hobbs Act Robbery)

1. On or about September 6, 2016, in the Southern District of New York, JOHNELL TURNER, the defendant, unlawfully and knowingly did attempt to commit a robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did aid and abet the same, and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TURNER attempted to commit an armed robbery of a chain restaurant located in New York, New York, which operates in interstate commerce.

(Title 18, United States Code, Section 1951.)

COUNT TWO
(Hobbs Act Robbery)

2. On or about October 5, 2016, in the Southern District of New York, JOHNELL TURNER, the defendant, unlawfully and knowingly

did commit a robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did aid and abet the same, and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TURNER committed an armed robbery of a livery taxicab driver, who operates in interstate commerce, in the vicinity of Queens, New York.

(Title 18, United States Code, Section 1951.)

## COUNT THREE
(Hobbs Act Robbery)

3. On or about October 5, 2016, in the Southern District of New York, JOHNELL TURNER, the defendant, unlawfully and knowingly did commit a robbery, as that term is defined in Title 18, United States Code, Section 1951(b)(1), and did aid and abet the same, and did thereby obstruct, delay, and affect commerce and the movement of articles and commodities in commerce, as that term is defined in Title 18, United States Code, Section 1951(b)(3), to wit, TURNER committed an armed robbery of a chain videogame store located in Bronx, New York, which operates in interstate commerce.

(Title 18, United States Code, Section 1951.)

## COUNT FOUR
(Firearms Offense)

4. In or about September and October 2016, in the Southern District of New York, JOHNELL TURNER, the defendant, during and in relation to a crime of violence for which he may be prosecuted in a court of the United States, namely the crimes charged in Counts One, Two, and Three of this Complaint, in violation of Title 18, United States Code, Section 1951, knowingly did use and carry a firearm, which firearm was possessed, brandished, and discharged.

(Title 18, United States Code, Section 924(c)(1)(A)(i), (ii), and (iii).)

## COUNT FIVE
(Felon in Possession of a Firearm)

5. On or about October 14, 2016, in the Southern District of New York, JOHNELL TURNER, the defendant, after having been convicted in a court of a crime punishable by imprisonment for a term exceeding one year, knowingly did possess in and affecting commerce a firearm, to wit, a .25 caliber semi-automatic Lorcin handgun, which

previously had been shipped and transported in interstate and foreign commerce.

(Title 18, United States Code, Section 922(g)(1).)

The bases for my knowledge and the foregoing charges are, in part, as follows:

6. I have been involved in the investigation of this matter in my role as a Detective with the New York City Police Department's ("NYPD") Joint Robbery Task Force, and I base this affidavit on that experience, as well as on my conversations with other law enforcement agents, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of demonstrating probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### **ATTEMPTED ROBBERY OF MANHATTAN RESTAURANT**

7. Based on my conversations with other NYPD officers, and my review of law enforcement records and reports, I have learned that on or about September 6, 2016, NYPD officers responded to reports of an attempted armed robbery at a restaurant in New York, New York ("Restaurant-1"). That night, an NYPD Detective ("Detective-1") interviewed an employee of Restaurant-1 ("Victim-1"), who told Detective-1 the following, in substance and in part:

   a. On or about September 6, 2016, Victim-1 was working as the assistant manager of Restaurant-1. Around midnight that night, Victim-1 was in the back office of Restaurant-1, getting ready to close for the night, when Victim-1 saw JOHNELL TURNER, the defendant, standing at the doorway of the office. Victim-1 knows TURNER because TURNER is a former employee of Restaurant-1 who had been fired a few weeks prior to September 6, 2016. Victim-1 observed that TURNER had a bag in his hand. TURNER told Victim-1 that he wanted to charge his phone. After Victim-1 refused to allow TURNER to charge his cellphone, TURNER pulled a black handgun out of the bag, pointed it at Victim-1, and instructed Victim-1 to open the safe. Victim-1 told TURNER that Victim-1 could not open the safe. TURNER demanded that the safe be opened, or he would shoot. TURNER then left Restaurant-1.

8. I have reviewed surveillance video recovered from Restaurant-1, which shows the inside of the back office in Restaurant-1 on the night of September 6, 2016. The surveillance

video shows a black male, later identified as JOHNELL TURNER, the defendant, approach the doorway of the office and engage in a discussion with Victim-1. TURNER pulls what appears to be a black semi-automatic handgun out of a bag, points it at Victim-1, and gestures at a safe located in the office. Victim-1 looks directly at the surveillance camera, and TURNER then also looks directly at the camera. TURNER then leaves the office.

        9.    I have reviewed a photograph of JOHNELL TURNER, the defendant, obtained from law enforcement booking records ("Photograph-1"). Based on my comparison of Photograph-1 and the video surveillance from Restaurant-1 described in paragraph 8, above, I recognized TURNER as the suspect in the attempted robbery of Restaurant-1.

        10.    Restaurant-1 is part of a chain of restaurants with locations in multiple states, and operates in interstate commerce.

## TAXI ROBBERY AND SHOOTING

        11.    Based on my conversations with other law enforcement officers, and my review of law enforcement records and reports, I have learned the following, in substance and in part:

        a.    On or about October 5, 2016, NYPD officers responded to a reported shooting of a livery taxicab driver ("Victim-2") in the vicinity of 2369 1st Avenue in New York, New York, at approximately 8:55 a.m. Victim-2, who had been driving a green taxi minivan, was taken to the hospital after having sustained gunshot wounds to the right hand and forearm.

        b.    An NYPD Detective ("Detective-2") interviewed Victim-2 in the afternoon of October 5, 2016, at the hospital. Victim-2 told Detective-2 the following, in substance and in part:

        i.    That morning, Victim-2 picked up a passenger ("Passenger-1"), later identified as JOHNELL TURNER, the defendant, in the vicinity of Ozone Park, Queens. Passenger-1 requested to be driven to East 125th Street and Lexington Avenue in Manhattan. While en route over the Triboro Bridge, Passenger-1 asked Victim-2 if Victim-2 had change for $100, and Victim-2 said yes. After reaching Manhattan, Passenger-1 made several statements to the effect that Passenger-1 did not have money for the fare, but would get money from someone else. Passenger-1 directed Victim-2 to stop at housing projects located in between East 124th Street and East 120th Street just south of the Triboro Bridge.

        ii.    After Victim-2 turned onto 1st Avenue,

4

Passenger-1 told Victim-2 to pull over. Passenger-1 said he would go get the money. Victim-2 asked Passenger-1 to give Victim-2 his cellphone as assurance that Passenger-1 would return with the fare. TURNER handed Victim-2 his phone, and got out of the taxi. Passenger-1 then began to yell at Victim-2 and demand his phone back. Passenger-1 was standing right behind the drivers' side door. Victim-2 turned to hand the cellphone back with his left hand, when Victim-2 saw Passenger-1 pointing a gun at his face. Victim-2 pushed the gun out of his face with his right hand, at which point the gun fired, shooting Victim-2 in the hand. Passenger-1 fled on foot.

    c. On or about October 5, 2016, NYPD Crime Scene recovered, among other items of evidence, a .25 caliber shell casing from the vicinity of Victim-2's taxicab.

    12. I have reviewed video surveillance footage recovered from Victim-2's taxicab. The surveillance video shows the backseats of Victim-2's taxicab on the morning of October 5, 2015. In the video, Passenger-1 is wearing a dark-colored front-zip sweatshirt with a white Nike "swoosh" logo, and has facial hair, including a mustache. I recognized Passenger-1 as JOHNELL TURNER, the defendant, based on my prior review of Photograph-1.

    13. Based on my conversations with Detective-2, I have learned that Detective-2 has reviewed surveillance video obtained from a subway stop in the vicinity of the shooting of Victim-2. According to Detective-2, the surveillance video shows Passenger-1 entering the subway shortly after the time of the shooting on October 5, 2016.

    14. On or about October 16, 2016, I interviewed Victim-2, who told me, in substance and in part, that Victim-2 regularly transports passengers out of state to locations including Newark Airport as part of Victim-2's work as a livery taxicab driver.

### MANHATTAN VIDEOGAME STORE ROBBERY

    15. Based on conversations with other law enforcement officers, as well as my review of law enforcement records and reports, I have learned that on or about October 5, 2016, at approximately 11:45 a.m., NYPD officers responded to a reported armed robbery of a commercial videogame store ("Store-1") in the Southern Bronx, New York. That afternoon, an NYPD detective ("Detective-3") interviewed an employee of the store ("Victim-3"), who told Detective-3 the following, in substance and in part:

    a. At approximately 10:30 a.m. on October 5, 2016, Victim-3, who was working as an employee of Store-1, observed a black

5

male wearing a black Nike hoodie, gray sweat pants, and gray sneakers ("Customer-1"), later identified as JOHNELL TURNER, the defendant, enter the store and browse for approximately 50 minutes. When the store became less busy, Customer-1 approached the cash register and asked Victim-3 about some videogames. While Victim-3 was showing Customer-1 the games, Customer-1 took out a firearm from a plastic bag, pointed it at Customer-1, and demanded money. Customer-1 reached into the cash register and removed approximately $500. Customer-1 then left the store and fled on foot.

16. I have reviewed video surveillance footage recovered from Store-1, which shows the interior of Store-1, including the cash register area, on the morning of October 5, 2016. In the video, Customer-1 is wearing a dark-colored front-zip sweatshirt with a white Nike "swoosh" logo, and has facial hair, including a mustache. I recognized Customer-1 as JOHNELL TURNER, the defendant, based on my prior review of Photograph-1.

17. Store-1 is part of a chain of retail stores with locations in multiple states, which operates in interstate commerce.

## GUN POSSESSION AND ARREST

18. Based on my conversations with an NYPD officer ("Officer-1"), I have learned the following, in substance and in part:

   a. On or about October 14, 2016, the NYPD received an alert from the New York City Department of Human Resources Administration someone was using an EBT benefits card belonging to JOHNELL TURNER, the defendant, at a bodega ("Bodega-1") on Sound View Avenue in the Bronx, New York.

   b. Officer-1 responded to Bodega-1 at approximately 8:00 p.m. on or about October 14, 2016. Officer-1 had previously reviewed an NYPD wanted poster seeking TURNER for the September 6, 2016, robbery of Restaurant-1. The wanted poster featured Photograph-1. Officer-1 was also aware that TURNER was a suspect in the October 5, 2016, taxicab shooting, and that TURNER had an outstanding parole warrant for his arrest.

   c. After canvassing Bodega-1 and the area around Bodega-1, Officer-1 recognized TURNER standing inside Bodega-1. Officer-1 asked TURNER his name, to which TURNER responded that his name was "Johnell Turner." TURNER also provided a benefits card with his name on it to Officer-1.

   d. Officer-1 placed TURNER under arrest and

handcuffed him. During a frisk of TURNER, Officer-1 felt a hard object inside TURNER's pants. Officer-1 recovered a Lorcin .25 caliber semi-automatic handgun (the "Firearm") from TURNER's underwear.

        19. On or about October 14, 2016, I participated in an interview of JOHNELL TURNER, the defendant, following his arrest. While transporting TURNER to be interviewed, I administered Miranda warnings to him. Prior the interview, I read TURNER his Miranda warnings a second time, and TURNER signed a Miranda waiver card. During the interview, TURNER made the following statements, in substance and in part:

        a. TURNER admitted to possessing the Firearm earlier from him that day in Bodega-1.

        b. When asked about the shooting of the taxicab driver, TURNER stated, in substance, that it was not a robbery.

        20. I have communicated with a Special Agent from the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF Agent") who is familiar with the manufacturing of firearms. Based on my communications with the ATF Agent, I know that the Firearm is not and has never been manufactured in New York State.

        21. I have reviewed criminal history records pertaining to JOHNELL TURNER, the defendant, which show that on or about January 11, 2011, TURNER was convicted in Bronx County Supreme Court of Robbery in the First Degree, in violation of New York Penal Law § 160.15, a Class D Felony, and sentenced to 87 months' to 102 months' imprisonment.

WHEREFORE, the deponent respectfully requests that JOHNELL TURNER, the defendant, be imprisoned or bailed, as the case may be.

*[signature]*

ELLIS DELOREN
Detective
New York City Police Department

Sworn to before me this
17th day of October, 2016

*[signature]*

HONORABLE HENRY B. PITMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK